**L.D. "Bubba" HARRELL and Julia R. Harrell, Plaintiffs,**

v.

**REYNOLDS METALS COMPANY, et al., Defendants.**

Civ. A. No. 84-AR-5283-NW.

United States District Court, N.D. Alabama, Northwestern Division.

Jan. 4, 1985.

William K. Hewlett, Steven K. Aldridge, Hewlett & Black, Muscle Shoals, Ala., for plaintiffs.

C.V. Stelzenmuller, David D. Dowd, III, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration the motion of plaintiffs, L.D. "Bubba" Harrell and Julia R. Harrell, to remand this cause to the Circuit Court of Colbert County, Alabama, from which it was removed by defendants, Reynolds Metals Company, Milton Tirey, Paul Well, Martin Hardy, Jr., Bob Andress and Neal Bishop, who constitute all of the defendants. The court has heard oral argument and received briefs on plaintiffs' motion to remand.

Plaintiffs are residents of the State of Alabama, as are all of the individual defendants. The defendant Reynolds Metals Company is a corporation which is not a resident of the State of Alabama. The claimed basis for removal is that the individual defendants "were fraudulently joined for the sole purpose of defeating the removal jurisdiction of the federal courts". The defendants quickly point out that their use of the word "fraudulently" is not pejorative, but is simply a term designed to meet one of the magic tests of diversity.

Their argument necessarily is that fraudulent joinder is implied if the non-diverse defendants are due to be dismissed pursuant to their motion for summary judgment under Rule 56, F.R.Civ.P. (or Rule 56, Alabama Rules of Civil Procedure?), thus leaving only parties with diverse citizenship. Defendants assert that only after the deposition of "Bubba" Harrell was taken did they learn that there is no dispute of material fact as between plaintiffs and the individual defendants and that within the 30 day period following this "discovery" they filed their removal petition. This court believes that "fraudulent joinder" means more than having a losing case against those defendants allegedly "fraudulently joined". The removing defendants on a "fraudulent joinder" theory have more than just a Rule 56 burden. *Jett v. Zink,* 474 F.2d 149 (5th Cir.1973), cert. denied, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973); *Jett v. Zink,* 362 F.2d 723 (5th Cir.1966), cert. denied, 385 U.S. 987, 87 S.Ct. 600, 17 L.Ed.2d 448 (1966).

The court finds it mildly interesting that the individual defendants did not file a motion for summary judgment in the state court after allegedly learning of the non-viability of plaintiffs' complaints against them. Perhaps subsequent discussion in this opinion will provide an explanation. This court, of course, agrees with defendants that this court must make its own determination of whether or not parties were fraudulently joined in the state court for the sole purpose of defeating diversity jurisdiction. It is this court which must determine the existence or non-existence of its own jurisdiction, and on this question it does not defer to the state court.

This court finds it more interesting than that the individual defendants who joined in the removal petition on April 23, 1984, did not file a motion for summary judgment in the state court, the fact that they have not filed a motion for summary judgment in this court, although the success of their removal petition, on their own theory, depends upon the granting of such a motion. To deny the motion to remand would

be tantamount to granting a non-existent motion for summary judgment. Eight months elapsed between the removal and the pre-trial conference which took place on December 18, 1984, without any motion for summary judgment having been filed. The defendants have created an anomaly for the court.

Plaintiffs' motion to remand misses the real points. Defendants' arguments also fail to address the two issues which the court deems dispositive. The parties limit themselves to the pros and cons of granting an unfiled motion for summary judgment. The court may or may not agree with the varying contentions made by the individual defendants upon which they would have the court reach the conclusion that none of the remaining causes of action asserted against them have viability. However, the court does not reach this question. It does discuss two other questions, namely, the question of the timeliness of the removal and the question of the so-called *Kettelhake* rule.

### The Question of Timeliness

■ First, the court concludes that this removal petition was not timely filed. Defendants start with the concession that 28 U.S.C. § 1446 requires removal within 30 days from the date upon which a case first becomes removable. However, the court is unaware of any authority which would constitute as the triggering date for removability the revelation in a discovery deposition of some fact upon which counsel for the removing defendants exercise a value judgment which would, if their judgment ultimately proves correct, eliminate the non-diverse parties by summary judgment. The fact is that removability is triggered by 28 U.S.C. § 1446 only by service of the summons and complaint or by "receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained" that the case is removable. A deposition taken by defendant does not constitute any of these events. Assuming for the sake of argument that the "admissions" made by Bubba

Harrell during his deposition taken on March 29, 1984, are dispositive of his claims against the individual defendants, the same facts apparently were known to defendants long before March 29, 1984, and could have been included in affidavits by them accompanying a much earlier motion for summary judgment. Why, then, did not defendants make the allegations of "fraudulent joinder" and file their removal petition long before April 23, 1984 if they thought § 1446 allowed removal? If the learning of a "fact" in a discovery deposition can set the date upon which the case first becomes removable, then why should not the same "fact" learned from an investigator's statement taken *ex parte* from a potential witness trigger the removal requirement? Defendants cannot be allowed to turn on their own mental light bulb for ascertaining removability. Also, if defendants had wished to wait until all risk of their holding an erroneous belief in the efficacy of a Rule 56 motion were eliminated, they would have actually filed a Rule 56 motion in the state court and had it granted, whereupon there would certainly have been no question as to the fact of complete diversity appearing for the first time. But, would such a ruling have helped defendants to effectuate a removal? It would not have helped them, as will appear as the court examines the second and more important reason why the case must be remanded to the state court.

### The Kettelhake Rule

■ More persuasive than the untimely filing of the removal petition as a reason for remanding this case to the state court is what happened in the state court before the removal. If the state court had, in fact, granted a motion for summary judgment in favor of all individual defendants, and if Reynolds Metals Company had thereupon attempted to remove, the removal clearly would have been precluded by the rationale of and necessary implications from *American Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 35 S.Ct. 355, 59 L.Ed. 594 (1915). The Supreme Court of the United States has not deviated from its

*Kettelhake* rationale from 1915 until today despite the 1949 amendment to 28 U.S.C. § 1446. Professors Wright and Miller recognize the proposition for which *Kettelhake* stands and come down on the side of non-removability. These leading commentators on federal practice and procedure say:

> Prior to 1949, a case did not become removable if the nondiverse party was eliminated from the case by a directed verdict, unless that party had been fraudulently joined originally to defeat removal. The federal courts drew a distinction between the state judge terminating the action as to the nondiverse party, which did not make a case removable, and the plaintiff voluntarily terminating the action as to a nondiverse party, which permitted removal. This distinction had merit in that it prevented removal when the nondiverse party was eliminated by a court order that might be reversed on appeal. It is not entirely clear whether this distinction has survived the 1949 amendment to Section 1446, which authorizes removal, if the case was not initially removable, upon "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or had become removable." Read literally the reference to "order" in the statute seems to overrule the pre-1949 cases and permit removal when a nondiverse party is eliminated by a court order related to the merits of the dispute. It should be noted that this construction of the statute is not inevitable. It seems very doubtful that Congress intended to abolish the former distinction, although the legislative history is quite ambiguous. *Most cases subsequent to the amendment have held that the distinction has survived and on balance this seems to be the proper view.* (emphasis supplied).

Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 3723 (1976).

Even though the individual defendants did not actually file a motion for summary judgment in the state court, *Kettelhake*'s reasoning nevertheless precludes removal. Why? The original complaint contained four separate counts or theories of alleged liability. In response to a motion to dismiss filed by all defendants, the Honorable Inge Johnson, Judge of the Circuit Court of Colbert County, on February 28, 1984, entered an order which (a) dismissed Count II entirely as against all individual defendants; (b) dismissed Count III entirely as to plaintiff Julia R. Harrell, and (c) dismissed Count IV entirely as against all defendants. The removal petition interprets this ruling by the state court as constituting a dismissal of the entire complaint of one plaintiff, Julia R. Harrell. In paragraph 3 of its petition for removal, Reynolds Metals Company asserts:

> Respondent, Julia R. Harrell, was a plaintiff in the action when it was commenced, but her only claim in this action (for loss of consortium) was dismissed on February 29, 1984, by Order of the Circuit Court of Colbert County, Alabama...

The federal court was not designed to act as a court for reviewing the rulings of a state court as to issues of state law. The parties to a cause in a state court are entitled under the constitutional requirement of substantive "due process" to an appellate review of the rulings of a state court by the appropriate appellate tribunal in *that state's* judicial system. Without either agreeing or disagreeing with Judge Johnson's rulings, the theoretical but essential fact is that Judge Johnson *could be* wrong. The proper court for deciding whether Judge Johnson was right or wrong is the appropriate Alabama appellate court. The expedient of removal to a federal court cannot be allowed to cut off such a fundamental right of judicial review. It goes without saying that if the Supreme Court of Alabama should ultimately enter an order setting aside what Judge Johnson did and reinstating Count II, Count III or Count IV, there would be no complete di-

**970**

versity in this case. The compelling concepts behind *Kettelhake* are (1) that the diversity must either exist when the suit is filed or thereafter be created by the voluntary act of the plaintiff and not by plaintiff's involuntary act or by the act of the state court; and (2) that federal courts cannot trespass upon the orderly appellate processes of the state courts. Bubba Harrell's "admissions" during his deposition do not constitute a "voluntary" act of the sort which permits diversity removal, much less constitute any of the triggering events in § 1446.

Because of *Kettelhake,* and its lineal descendents, this court finds that plaintiff did not fraudulently, i.e., deliberately, join as defendants the individual Alabama residents for the sole purpose of defeating federal jurisdiction. Plaintiffs' claims against the individual defendants may well prove to be without merit, but their claims have sufficient legitimacy under *Kettelhake* in the procedural posture of this case to preclude removal.

Although plaintiffs did not point to any of the reasons above discussed for remanding this cause, this court itself points out that it has an absolute obligation to examine its own jurisdiction. 28 U.S.C. § 1447(c); *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980). One good reason for a federal court's careful examination of its jurisdiction on removal is that a removing defendant who himself invokes federal jurisdiction can later challenge that same jurisdiction if and when he becomes unhappy with the result which he obtains at what appears to be a trial on the merits in the federal court. *Belle View Apts. v. Realty Refund Trust,* 602 F.2d 668 (4th Cir.1979). Therefore, the resolution of the controversies between the parties in this case will not be vulnerable to attack for want of jurisdiction if their resolution takes place in the state court, and that is where the resolution will take place.

For the reasons discussed an order of remand will be entered.