**Irving KATZ and Viola Katz, Plaintiffs,**

v.

**COSTA ARMATORI, S.P.A., and Dr. Ennio Tossi, Defendants.**

No. 88–2006–Civ.

United States District Court, S.D. Florida.

April 3, 1989.

Robert Pasin, Fort Lauderdale, Fla., for plaintiffs.

George Mencio, Jr., Barbara Ehrich Locke, Holland & Knight, Miami, Fla., for defendants.

FINAL ORDER OF REMAND

JAMES LAWRENCE KING, Chief Judge.

Plaintiffs' motion to remand presents a common question, albeit in a limited context: whether a state court's summary adjudication in favor of a nondiverse defendant entitles the sole remaining diverse defendant to remove the case to federal court. The question ordinarily is answered negatively, unless the nondiverse defen-

dant was "fraudulently joined." A precise parameter for this "fraudulent joinder" exception has not conclusively been surveyed, and today the court lends its voice to the debate over this exception's scope.

The plaintiffs seek recovery for personal injuries that allegedly occurred while Viola Katz was a passenger on the vessel COSTA RIVIERA. Viola Katz purportedly broke bones in her arm, hand, and wrist when she fell on board the vessel, and these injuries were allegedly exasperated by the negligence of the ship's doctor.

The plaintiffs initiated this action in a Florida state court, seeking recovery from three defendants: Costa Cruises, Inc., and Costa Armatori, S.p.A. (the alleged joined owner of the vessel Costa Riviera) and Dr. Ennio Tossi (the ship's treating physician). Costa Cruises, Inc. is a New York corporation with its principal place of business in Miami, Florida. Costa Armatori is an Italian corporation with its principal place of business in Genoa, Italy. Dr. Ennio Tossi is an alien, and both plaintiffs are citizens of Florida. Accordingly, when the plaintiffs filed this action, complete diversity did not exist.

Costa Cruises, Inc. defended by asserting that it acted only as an agent for the disclosed principal, Costa Armatori, the true owner of COSTA RIVIERA. Accordingly, pursuant to the controlling federal maritime law, Costa Cruises believed it could not be liable for Viola Katz' injuries.

The state court agreed with Costa Cruises' position and granted its motion for summary judgment. The state court found that Costa Cruises was acting as an agent for the disclosed principal, Costa Armitori, and, thus, Costa Cruises could not be liable for any actions of its principal under federal maritime law.

Ten days after the issuance of this summary judgment order, the defendant Costa Armatori petitioned this court for removal.[1] As the case then existed, complete diversity was present. Accordingly, because this court could have had original jurisdiction over this controversy, the action apparently became removable pursuant to 28 U.S.C. § 1441(b).

The plaintiffs now move to remand. From their perspective, the judgment in favor of Costa Cruises was involuntary. This involuntary action, they argue, prevents this case from becoming removable under the "voluntary/involuntary rule."

The judicially-created voluntary/involuntary rule exists only in diversity cases. The rule provides "that if 'a resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case could not be removed.'" *Insinga v. La Bella*, 845 F.2d 249, 253–54 (11th Cir.1988) (citing *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967)).

The underlying purposes behind the rule are twofold. The first purpose rests upon the foundations of comity and judicial efficiency. *Insinga*, 845 F.2d at 252. Federal courts desire to avoid a transfer of a case when removal is premised on developments in the state court that could later be reversed by a state appellate court. *Id.* If reversal occurs, the parties would relegate to their original nondiverse positions, which of course would defeat federal jurisdiction.[2] *Id.*

The second policy supporting the voluntary/involuntary rule is grounded in the

---

1. The petition satisfied the requirements of 28 U.S.C. § 1446. Costa Armatori filed a timely petition, and although all defendants did not join in the petition as required, the record reflects that the nonjoining defendant Tossi has yet to be served, and, thus, did not have to join with the removing defendant. *See Lewis v. Rego*, 757 F.2d 66, 68 (3rd Cir.1985).

2. For the Second Circuit, this reasoning is the only rationale behind the voluntary/involuntary rule. *See Quinn v. Aetna Life and Casualty Co.*, 616 F.2d 38, 40 n. 2 (2nd Cir.1980). From the Second Circuit's point of view, when the state court's order dismissing the nondiverse defendant becomes final and the plaintiff does not appeal, the plaintiff's nonaction constitutes the functional equivalent of a voluntary dismissal. *Id.* Under the voluntary/involuntary rule, the dismissal is fictitiously voluntary and, therefore, the case is removable.

plaintiff's right to determine the removability of the case. *See Self v. General Motors Corp.*, 588 F.2d 655 (9th Cir.1978); *see also Insinga*, 845 F.2d at 253. This policy has its genesis in the analog of federal question removal cases, where "the removability of a case depends upon an examination of the face of the plaintiffs 'well-pleaded' complaint, without recourse to the defendants pleadings." *Insinga*, 845 F.2d at 253 (citing *Louisville and Nashville Railroad v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). The United States Supreme Court held in *Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 281–82, 38 S.Ct. 237, 239–40, 62 L.Ed. 713 (1918), that a plaintiff's power to determine the removability of the case continues throughout the litigation.

The defendant readily concedes that if the voluntary/involuntary rule were to apply here this action would not be removable. They maintain, however, that the rule is inapplicable because this action falls within the rule's fraudulent joinder exception.

The fraudulent joinder exception derives from the statutory requirements of 28 U.S.C. § 1441(b). In referring to diversity cases, § 1441(b)'s language directs the court to align the citizenship of the parties *properly* joined. If a party is improperly added, that party becomes "a sham party," *see Bookkeepers Tax Services, Inc. v. National Cash Register Co.*, 598 F.Supp. 336 (E.D.Tex.1984), *aff'd in part, rev'd in part on other grounds*, 808 F.2d 1119 (5th Cir. 1987), and the court disregards that joinder for purposes of removal, *see Hughes Construction Co. v. Rheem Manufacturing Co.*, 487 F.Supp. 345 (N.D.Miss.1980).

Fraudulent joinder exists in one of two situations. *See Insinga*, 845 F.2d at 254. The first situation covers the plaintiff fraudulently pleading jurisdictional facts in order to subject the nondiverse defendant to the jurisdiction of the state court. *Id.* (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983)). The second instance exists when the plaintiff could not possibly prove a cause of action against the nondiverse defendant. *Insinga*, 845 F.2d at 254 (citing *Coker*, 709 F.2d at 1440).

Because the removing party has the burden of proof on the issue of diversity in the removal context, *see Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983), the removing party must carry the burden of proof for fraudulent joinder, *id.*, a burden that courts characterize as "heavy," *see, e.g., McMorris v. Stafford*, 655 F.Supp. 671, 672 (M.D.La.1987) (citing cases). A claim that joinder is fraudulent must be asserted with particularity and supported by clear and convincing evidence. *See Arno v. Costa Line, Inc.*, 589 F.Supp. 1576, 1579 (E.D.N.Y.1984) (citing authority).

Costa Armatori alleges that the second instance of fraudulent joinder exists here. The defendant rests his argument upon common sense. Costa Armatori points to the state court's summary judgment against the nondiverse defendant, Costa Cruises. Armatori argues that when a court has issued summary judgment in favor of a defendant on a cause of action, a plaintiff "could then never prove" that cause of action against that defendant. Because the state court summary judgment here mandates that Costs Cruises could not be liable, Costa Armatori believes the plaintiffs fraudulently joined Costa Cruises.

Defendants argument is *a fortiori* logical. When a state court has granted summary judgment on a particular cause of action in favor of a defendant, a plaintiff rationally could never prove that cause of action against that defendant. This logic, however, exists only on a Platonic plane, for the ratiocination does not quite cover all the intricacies of removal. The twofold question necessarily before the court is whether a state court judgment forecloses a federal court from conducting an independent fraudulent joinder analysis, or must the federal court consider other factors to determine the existence of improper union. Essentially, this court must find the degree of deference the state court judgment receives in the federal fraudulent joinder context. In conducting this inquiry, the court first determines whether federal

law governs this diversity issue under the *Erie* doctrine, then analyzes the two separate lines of precedents that address the question, and concludes by formulating a two prong test for fraudulent joinder that most thoroughly promotes the congressional policy behind removal.

Because this is a diversity case, the court must first resolve whether federal or state law should govern this fraudulent joinder question. Fortunately, the fraudulent joinder exception is part of the federal common law interpreting 28 U.S.C. § 1441(b). A "considerably less intricate analysis," therefore, is needed than that which governs the " 'relatively unguided *Erie* choice.' " *See Stewart Organization, Inc. v. Ricoh Corp.*, ⸺ U.S. ⸺, 108 S.Ct. 2239, 2242, 101 L.Ed.2d 22 (1988) (quoting *Hanna v. Plumer*, 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965)).

When a federal statute covers the point in dispute, the district court must determine whether the federal statute represents a valid exercise of Congress' authority under the Constitution. *See Hanna v. Plumer*, 380 U.S. at 471, 85 S.Ct. at 1144. "If Congress intended to reach the issue before the district court, and if it enacted its intention into law in a manner that abides with the Constitution, that is the end of the matter." *See Stewart Organization, Inc.*, 108 S.Ct. at 2242. Federal courts then must apply the congressional dictate. *See Prima Paint Corp. v. Flood and Conklin Mgr. Co.*, 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967).[3]

The fraudulent joinder exception to the voluntary/involuntary rule is itself an issue of removal. By enacting 28 U.S.C. § 1441(b), Congress intended to exhaustively establish the conditions upon which diversity cases could be removed. *Cf. Sharp v. Elkins*, 616 F.Supp. 1561 (W.D.La.1985)

(finding congressional intent behind section 1441(b) to be the restriction of federal removal jurisdiction).[4] Accordingly, 28 U.S.C. § 1441(b) covers all removal issues involving fraudulent joinder.

■ Moreover, 28 U.S.C. § 1441(b) is constitutional. "The constitutional provision for a federal court system carries with it Congress's power to make rules governing the practice and pleading in those courts." *Hanna*, 380 U.S. at 472, 85 S.Ct. at 1144. Essentially, § 1441(b) should be regarded as a "federal judicial housekeeping measure." *Cf. Van Dusen v. Barrack*, 376 U.S. 612, 636–637, 84 S.Ct. 805, 819–20, 11 L.Ed.2d 945 (1964) (labeling 28 U.S.C. section 1404(a) as a federal judicial housekeeping measure). The statute, therefore, comes "within Congress' powers under Article III as augmented by the Necessary and Proper Clause." *See Stewart Organization, Inc. v. Ricoh Corp.*, 108 S.Ct. at 2245 (citing *Burlington Northern Rail Co. v. Woods*, 480 U.S. 1, 107 S.Ct. 967, 969 n. 3, 94 L.Ed.2d 1 (1987)). Accordingly, the court must apply federal law to resolve this question.

Within this framework, federal courts have given the fraudulent joinder exception two different interpretations. The first school of thought examines the entire state court record at the time of removal. This position has the effect of giving great deference to the activities in state court. On the other hand, the second line of precedents limits its analysis to the state court complaint. This posture has the effect of giving little deference to state court proceedings.

Courts adhering to the first school of thought believe when a party alleges fraud, a federal court should "pierce the pleadings," and consider the entire record to

---

**3.** If no federal statute or rule governs the point in dispute, the district court then proceeds to evaluate whether application of federal judge-made law serves the so called "twin aims of the Erie rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. at 468, 85 S.Ct. at 1142. If application of federal judge-made law would deserve these two policies, the district court should apply state law. *See Walk-*

*er v. Armco Steel Corp.*, 446 U.S. 740, 752–753, 100 S.Ct. 1978, 1986–86, 64 L.Ed.2d 659 (1980).

**4.** Of course, in the removal area, federal jurisdiction is even more limited than ordinary jurisdiction, for a resident defendant could never remove a diverse case, *see* 28 U.S.C. § 1441(b), but could be a party in an originally-filed diversity action.

determine the basis of joinder. *See Dodd v. Fawcett Publication, Inc.*, 329 F.2d 82, 85 (10th Cir.1964); *see also, McLeod v. Cities Service Gas Co.*, 233 F.2d 242, 246 (10th Cir.1956); *Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D.Ca.1979), *aff'd*, 710 F.2d 549 (9th Cir.1983). These courts believe that joinder of the nondiverse defendant against whom no cause of action exists is a " 'patent sham,' " *Dodd*, 329 F.2d 82, 85 (10th Cir.1964), and that the defendant's former presence in the case frustrated federal jurisdiction. *See Smoot v. Chicago Rock Island and Pacific Railroad Co.*, 378 F.2d 879, 882–83 (10th Cir.1967).

These courts also have formulated a rigid test to determine fraudulent joinder. These courts believe a court should not "pre-try, as a matter of course, doubtful issues of fact to determine removability." *Dodd*, 329 F.2d at 85. To sustain removal, these courts believe the issue must be capable of summary determination. *Id.; see also Spence v. Flynt*, 647 F.Supp. 1266, 1267 (D.Wy.1986).

Conversely, courts adhering to the second, more limited approach base their theories on a long line of United States Supreme Court precedents. In *Alabama Great Southern Railway v. Thompson*, 200 U.S. 206, 26 S.Ct. 161, 50 L.Ed. 441 (1906), the Supreme Court first addressed the methodology to determine the removability of a diversity case. The Court determined that "the right to remove depends upon the case made in the complaint against both defendants jointly." *Id.* at 217, 26 S.Ct. at 164. The *Thompson* Court held that this determination must be based exclusively on the pleadings. *Id.; see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348, 83 L.Ed. 334 (1939).

Although this ruling was severely challenged in *Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918), the Supreme Court reaffirmed the need to determine removability from the complaint. In *Alexander*, the defendant brought a wrongful death action in state court under the Federal Employers' Liability Act. The action was not removable because that Act gave the plaintiff a choice of forum. The case proceeded to trial, and at the end of the plaintiff's case, the defendant sought removal claiming that the plaintiff failed to prove an interstate commerce connection. The nexus was a requirement of the Federal Employers' Liability Act action and, without it, the case essentially became a state cause of action between citizens of different states. The Supreme Court did not endorse the defendant's theory. The Court found that an action not removable on the complaint can not be converted into a removable one by the presenting of evidence. *Id.* at 281–82, 38 S.Ct. at 239–40. The court noted that the plaintiff determines removability at the outset, and this right continues throughout the litigation. *Id.*

Lower courts have expounded upon these precedents. *See, e.g., Self v. General Motors Corp.*, 588 F.2d 655, 658–659 (9th Cir. 1978); *Bobby Jones Garden Apts., Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir.1968); *Bucksnort Oil Co. v. National Convenience Stores, Inc.*, 585 F.Supp. 883, 885–886 (M.D.Tenn.1984). These courts exclusively limit their analysis to a review of the complaint, and fail to find fraudulent joinder if "a reasonable basis for predicting that state law might impose liability" exists, *Bobby Jones Garden Apts., Inc. v. Suleski*, 391 F.2d 172, 176–177 (5th Cir. 1968), or the plaintiff "could conceivably recover," *see Dailey v. Elicker*, 447 F.Supp. 436, 438 (D.Co.1978), or "a cause of action lies," *see Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir.1983). For these courts, the ultimate failure to obtain a judgment is immaterial. *See, e.g., Voors v. National Womens' Health Organization, Inc.*, 611 F.Supp. 203, 208 (N.D.Ind. 1985).

Interestingly, the courts that have concerned themselves with facts most analogous to those here have utilized this more limited approach. In *Saylor v. General Motors Corp.*, 416 F.Supp. 1173, 1175–76 (E.D.Ky.1976), a state court entered summary judgment in favor of the nondiverse party, and the remaining diverse defendant petitioned for removal. The court found the voluntary/involuntary test to apply, *id.* at 1175, and rejected the defendant's fraud-

ulent joinder contention, *id.* at 1176. The court believed a reasonable basis for predicting liability existed, so the fact that a state court granted summary judgment became immaterial. *Id.* Similarly, the court in *Harrell v. Reynolds Metal Co.*, 599 F.Supp. 966, 968–69 (N.D.Al.1985), agreed, albeit *in dictum.* The court examined both the voluntary/involuntary rule and its fraudulent joinder exception in light of *American Car & Foundry Co. v. Kettelhake,* 236 U.S. 311, 35 S.Ct. 355, 59 L.Ed. 594 (1915). The court believed the mere granting of summary judgment by a state court did not subsume the voluntary/involuntary rule so long as the original complaint set forth theories of alleged liability. *Id.* at 969. The court rested this decision upon the fact that the plaintiff has a "substantive 'due process' " right to appeal the state court judgment in a state appellant court without interference from a federal court exercising removal jurisdiction. *Id.*

Nonetheless, this court cannot chauvinistically follow these cases. These authorities, as well as the two schools of thought, are plagued with major theoretical problems, whose cure is necessary in order to entirely promote the congressional intent behind removal.

The major problem with the courts supporting a review of the entire state court record is that their methodology differs greatly from that used to determine removal in the federal question area. The "well-pleaded complaint" rule governs removal for actions premised upon federal question jurisdiction. *See Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277, 281 (11th Cir. 1987). Essentially, whether a claim contained in a state court complaint "arises under" federal law is governed by whether the plaintiffs "well-pleaded complaint" raises federal issues. *See Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville and Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), *overruled on other grounds, Smith v. Kansas City Title & Transfer Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). The theory supporting this rule is that the plaintiff is the master of the complaint and may avoid federal jurisdiction by relying exclusively upon state law. *See Darden v. United States Steel Corp.,* 830 F.2d 1116, 1119 (11th Cir. 1987). With a possible exception of the complete preemption doctrine, an "independent corollary" of the well-pleaded complaint rule that applies in cases involving § 301 of the Labor Management Relations Act of 1947, *see Darden,* 830 F.2d 1116, and ERISA claims, *see Belasco,* 833 F.2d at 281–82, reference to any other pleading within the record is prohibited. *See Louisville & Nashville Railroad Co.,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

The need for the difference between this limited review for federal question removal and an expanded analysis for diversity removal is mysterious, for the essential questions presented in both instances are similar. In the diversity context, the district court examining fraudulent joinder is not asked to find "fraud." The words fraudulent joinder are "not pejorative but are simply terms designed to meet one of the mechanical tests of diversity." *Harrell v. Reynolds Metals Co.,* 599 F.Supp. 966, 967 (N.D.Al.1985). A court need only determine whether a cause of action exists against the nondiverse defendant. Under the well-pleaded complaint rule, the court makes a similar determination. In essence, the court must determine whether a plaintiff's cause of action essentially is a federal one. *See Louisville & Nashville Railroad Co.,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

The court can find no justifiable reason for this difference in approaches. Federal law of removal—indeed, the same § 1441(b)—governs both federal question and diversity removal. Moreover, federal courts face both federal question and diversity removal problems at any stage of the state court litigation. Because these courts do not explain the need for the difference in methodologies, their test for fraudulent joinder remains dubious.

In addition, these courts are troubled by another theoretical hornet's nest. The determination of fraudulent joinder through their analysis may allow the fraudulent joinder exception to eviscerate the volun-

tary/involuntary rule. Every time a state court issues summary judgment in favor of a nondiverse defendant, the plaintiff in fact can never prove the cause of action against that defendant. Accordingly, in an action with only one remaining diverse defendant, that defendant could automatically remove the action. This conclusion necessarily renders the voluntary/involuntary distinction meaningless, for an involuntary dismissal via a state court summary judgment makes the case as removable as when the plaintiff voluntarily dismisses the nondiverse defendant.

Similarly, theoretical problems undermine the position that advocates a more limited approach. A federal court's following of this more narrow fraudulent joinder analysis could lead to a frustration of federal jurisdiction. This possibility explicitly exists in a state court case where the complaint states a cause of action against both a diverse and nondiverse defendant, but later developments in the case show that the action against the nondiverse defendant is frivolous. The action is removed when the state court dismisses the nondiverse defendant. When examining the petition for removal, the federal court that adheres to the limited review would remand,[5] even though the action against the nondiverse party was essentially a sham. Without this sham party, diversity jurisdiction in fact exists. The order of remand, therefore, has the effect of frustrating federal jurisdiction, for the federal courts should not be completely prevented "from protecting the litigant's right to diversity jurisdiction when the controversy really is between parties on one side who are all from different states than those on the other side." *Lowell Staats Mining Co. v. Philadelphia*

*Electric Co.*, 651 F.Supp. 1364, 1365 (D.Co. 1987) (citing 14 Wright, Miller & Cooper, *Federal Practice and Procedure*, Jurisdiction, § 1364 (1985)).

The Supreme Court expressed a similar concern in *Wecker v. National Immanuel Co.*, 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430 (1907). In *Wecker*, the plaintiff sued his employer and two employees, one of whom was of the same citizenship as the plaintiff. By affidavit, the co-employee of the same citizenship stated that his position within the company was not connected to either the plaintiff or the job site of the plaintiff's injury.

The Supreme Court began its analysis by noting that a plaintiff may proceed in the state court upon allegations grounded in good faith. *Id.* at 185, 27 S.Ct. at 188. The Court, however, also placed equal weight behind the rule that "federal courts should not sanction devices intended to prevent removal to a federal court when one has the right." *Id.* at 185–186, 27 S.Ct. at 188. The Court encouraged the federal courts to be vigilant in protecting the right to proceed in federal court as well as permitting the state courts in proper cases to retain their own jurisdiction. *Id.*

The courts that follow the limited approach sometimes may be less than vigilant in protecting a diverse defendant's right to proceed in federal court. In determining fraudulent joinder exclusively from the state court complaint, these courts may ignore aspects of the state court record that would reveal the nonexistence of diversity as a sham. This analysis, therefore, may not allow removal where it is proper, and may even render the fraudulent joinder exception meaningless.[6]

**5.** This decision's framework would be simple. Because of the state court dismissal, the voluntary/involuntary rule comes into focus. The district court would be required to remand under that rule unless the joinder of the nondiverse party was fraudulent. In determining the existence of this exception, the court limits itself to the complaint. Because the state court determined that a cause of action was stated, no fraudulent joinder could exist, and the case would be remanded.

**6.** Essentially, the exception would not exist in this type of case. The fraudulent joinder exception, derived from the words "parties properly joined" in 28 U.S.C. § 1441(b), protects defendants seeking to assert their removal rights from the addition of "sham" parties that defeat federal jurisdiction. *See Bookkeepers Tax Services, Inc. v. National Cash Register Co.*, 598 F.Supp. 336 (E.D.Tex.1984). Under the limited approach, if the action against the party that prevents removal is frivolous, fraudulent joinder must exist. Nevertheless, the court would remand under the voluntary/involuntary rule,

This court can fashion a methodology, however, that avoids these problems and promotes the congressional policies that underlie removal in the fraudulent joinder context. Essentially, this court's fraudulent joinder exception analysis has two parts. The first tenet is a review of the state court complaint to determine whether a cause of action against the nondiverse defendant or defendants exists. If a cause of action is stated, then the court should review the state court record under Fed.R. Civ.P. 11 to assure that the continued action against the nondiverse party was not a sham.

For the first prong of this analysis, a federal court should utilize the mechanics of Fed.R.Civ.P. 12(b)(6). *Accord Mabray v. Velsicol Chem. Corp.*, 480 F.Supp. 1240 (W.D.Tenn.1979). These procedural guidelines mandate that the federal court review the complaint under the relevant state law. If the state court has denied a motion to dismiss because the complaint stated a cause of action, and that state's law is controlling[7], the federal court, out of deference to the state court, should consider the state court ruling as satisfying this first prong. Only if no cause of action is stated can the federal court conclude that the joinder of the nondiverse defendant was fraudulent, and, thus, permit removal.[8]

The second prong, reached only if a cause of action is stated, is a review of the state court record pursuant to the spirit of Fed.R.Civ.P. 11.[9] The spirit of Fed.R. Civ.P. 11 is the requirement that an attorney maintain a case only if he or she conducts a reasonable inquiry throughout and believes in good faith that the maintenance of action is warranted by existing law or a change therein. *See generally*, Vario, *Rule 11: A Critical Analysis*, 118 F.R.D. 189, 194 (1988). Essentially, the court must determine whether the plaintiff's attorney has satisfied the "continuing duty" obligation of not maintaining a frivolous suit. *See Collins v. Walden*, 834 F.2d 961, 965 (11th Cir.1987) (dictum); *Van Berkel v. Fox Farm and Road Machinery*, 581 F.Supp. 1248 (D.Minn.1984).[10] If this obligation is satisfied, then fraudulent joinder does not exist, and the case is remanded.[11]

---

*supra,* p. 1514, n. 5; therefore, the exception would be rendered void.

**7.** Primarily, this deference derives from the fact that a state court has interpreted its own law. The federal court deference, therefore, is consistent with the principles of "Our Federalism."

Such principles would be lacking if the state court applied another state's law to deny the motion to dismiss. A federal court in this instance should conduct its own analysis of the complaint in light of the controlling state law under the dictates of Fed.R.Civ.P. 12(b)(6). If the federal court deferred to the state court, the deference would stem more from judicial economy (avoiding two courts making the same decision) than from principles of "Our Federalism."

**8.** The district court should not concern itself with whether an allowance should be made for the plaintiff to amend the complaint to state a cause of action. Such a ruling would amount to a waste of time. If a defect in the cause of action is merely technical such that an amendment normally would be allowed, then the federal court should consider the cause of action as sufficiently stated for these purposes.

**9.** The district court should focus upon the spirit, rather than the letter, of Fed.R.Civ.P. 11 because a finding of the particular signed pleading leading to a violation of the Rule is not necessary.

A court needs to examine the entire record to determine whether the nondiverse defendant is a *bona fide* party. The court should not focus upon the pre-filing investigation of the attorney that surrounded a particular pleading. That type of analysis would be somewhat intellectually dishonest, for Fed.R.Civ.P. 11 does not apply to pleadings filed prior to the removal petition. *See, e.g., Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 (4th Cir.1987).

In addition, reference to a Federal Rule of Civil Procedure here is proper, even if these Rules were not binding on the attorney in the state proceeding. Aside from the fact that most states have rules paralleling Fed.R.Civ.P. 11, federal law must govern this analysis under the *Erie* doctrine. *See supra,* p. 1510. For the federal court, the law surrounding Fed.R.Civ.P. 11 is well-established, and provides a familiar quick reference to conduct this inquiry.

**10.** *But see Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866 (5th Cir.1988). These courts believe that the attorney's investigation is limited to pre-filing. Accordingly, these courts reject the "continuing duty" theory.

**11.** The state court record should be replete with materials that allow the federal court to make this finding. Discovery materials, including

If the obligation is not satisfied, then the case should be removed. The removal would be tantamount to finding that the plaintiff's attorney "should have" voluntarily dismissed the action against the nondiverse defendant.[12] Pursuant to the voluntary/involuntary rule, this fictitious dismissal makes the case removable.[13]

Well-reasoned precedents support both prongs of this test. The first tenet of the court's analysis falls in line with traditional federal jurisdiction analysis. A court should always begin a federal subject matter jurisdictional inquiry with the complaint. *See Alabama Great Southern Railway v. Thompson,* 200 U.S. 206, 217, 26 S.Ct. 161, 164, 50 L.Ed. 441 (1906); *Pullman Co. v. Jenkins,* 305 U.S. 534, 538–39, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939). The opinions requiring a federal court to look beyond the pleadings when fraud is alleged support this second prong. When a defendant alleges fraudulent joinder, a court must pierce the pleadings and consider the entire record as it existed at the time the removal petition was filed.[14] *See Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82, 85 (10th Cir.1964); *see also Chesapeake & Ohio Railway Co. v. Cockrell,* 232 U.S. 146, 151–153, 34 S.Ct. 278, 279–280, 58 L.Ed. 544 (1914).

This two prong analysis also strikes a balance between the jurisdictional rights of plaintiffs and defendants. A plaintiff should have the right to determine the forum that will hear the cause by properly joining the necessary parties that defeat federal jurisdiction. That plaintiff should then proceed with his case, and in good faith attempt to establish liability on the part of all defendants. If through the course of a good faith litigation, the court adjudicates in favor of the nondiverse party or parties, the plaintiff still should not lose the forum choice right. After all, the assurance of a good faith attempt to impose liability, whether or not successful, is a hallmark of our system of laws. Under the court's analysis, therefore, so long as the plaintiff has acted in good faith, the case remains in state court. On the other hand, if the plaintiff joined the nondiverse party or parties only intending to frustrate federal jurisdiction, then the plaintiff should lose the forum selection right. A plaintiff maintaining a frivolous action should not benefit therefrom in any matter. The diverse defendant or defendants should then be allowed to exercise their right to federal jurisdiction, and remove the case. The court's analysis here assures the defendant of this right.

In addition, this two prong fraudulent joinder rule eliminates the problems associated with the two established lines of precedents. The rules governing removal for diversity and federal question jurisdiction cases are now somewhat consistent because both jurisdictional methodologies begin with the complaint. Additionally, because the two prong approach allows the plaintiff, even in light of an adverse state court judgment, to choose the forum so long as a good faith belief of liability exists, the fraudulent joinder exception does not swallow the voluntary/involuntary rule.[15] Moreover, this court's viewpoint

---

documents, affidavits, and depositions, as well as summary judgment motions and exhibits, should be of invaluable assistance in determining whether the continuing duty has been satisfied.

**12.** Professor Georgene M. Vario essentially agrees that the plaintiff's dismissal of a defendant against whom an action was meritless should absolve the plaintiff's attorney of Fed.R. Civ.P. 11 liability. *See* Vario, *Rule 11: A Critical Analysis,* 118 F.R.D. 189, 212 (1985).

**13.** Under the court's fraudulent joinder analysis, therefore, a case involving both diverse and nondiverse defendants is removable in three situations: (1) if the plaintiff voluntarily dis-

misses the nondiverse defendant; (2) if the plaintiff fraudulently pleads facts alleging a diverse defendant as nondiverse; and, (3) if the nondiverse defendant was involuntarily dismissed from the plaintiff's perspective and the action against the nondiverse defendant was totally meritless.

**14.** *See, e.g., Allied Programs Corp. v. Puritan Ins. Co.,* 592 F.Supp. 1274, 1276 (S.D.N.Y.1984) (finding that a district court should review state court record as it existed when defendant filed the removal petition).

**15.** Under the court's analysis, an involuntary dismissal of the nondiverse party or parties does not make the case removable unless the plaintiff

promotes congressional intent because the analysis allows removal where diversity truly exists and will not allow a plaintiff to defeat federal jurisdiction by joining a sham party.

Finally, this two prong fraudulent joinder rule makes fine judicial administrative sense. If a case became removable anytime the nondiverse defendant was dismissed, inefficiency may result. That case could become removable during the middle of a trial, or after the granting of a directed verdict or after the jury rendered a verdict but before final judgment was entered. To a large extent, this two prong approach to fraudulent joinder avoids these uneconomic situations.[16]

In applying the two prong rule of fraudulent joinder here, the court is not unmindful of the decision in *Arno v. Costa Lines, Inc.,* 589 F.Supp. 1576 (E.D.N.Y.1984). On facts similar to those here, the plaintiff sued Costa Lines, Inc., the ticket agent, and Costa Armatori, the owner of the relevant vessel. The *Arno* court believed Costa Lines was fraudulently joined. *Id.* at 1579–80. The court found that a copy of the passenger's ticket indicated that Costa Lines was an agent operating for a disclosed principal. As such, Costa Lines could not be liable for the negligence of its principal, the operator and owner of the ship. *Id.* The *Arno* plaintiff did not contest this argument. *Id.* Accordingly, the court believed that the plaintiff knew he could never prove a cause of action against the nondiverse defendant, Costa Lines, Inc., and allowed removal.

■ In sharp contrast to *Arno,* the plaintiffs here have contested throughout this litigation Costa Cruise's disclosed principal argument. The state court judge specifically held the disclosed principal argument to be insufficient to sustain Costa Cruise's motion to dismiss. The state court specifi-

cally found that the complaint stated the cause of action under maritime law. The Florida court granted summary judgment, not because the case appeared frivolous, but only because the plaintiff could not overcome the disclosed principal argument with competent evidence.

These actions are sufficient to satisfy the two prong fraudulent joinder test. As the state court found, the complaint stated a cause of action against the nondiverse defendant, Costa Cruises, Inc. Moreover, this court's review of the record indicates that the plaintiff's attorney satisfied the spirit of Fed.R.Civ.P. 11 in pursuing the cause of action against Costa Cruises. In good faith, the plaintiffs believed that the question whether the ticket adequately disclosed the principal Costa Armatori was an issue of fact. Accordingly, the action against Costa Cruises was not frivolous and, thus, fraudulent joinder does not exist here.

Because the summary judgment was involuntary, and no fraudulent joinder exists, the court must remand this action to the state court. The court, therefore,

ORDERS and ADJUDGES that the plaintiffs' motion for remand be, and the same is hereby GRANTED.

DONE and ORDERED.

---

acted in bad faith, in which case, the exception of "fraudulent joinder" applies.

**16.** This two prong analysis also allows substantial coexistence with the state court. This fraudulent joinder rule allows the federal court to consider the rulings of the state court. If these rulings indicate that no cause of action exists or that the maintenance of the action would be frivolous, then the federal court should take them as conclusive. This means that the federal rule of removal is satisfied, and no reason exists for the federal court to consider the issue twice. If the rulings do not satisfy this criteria, then the federal court must consider the entire record.