Billy GREER

v.

CROWN TITLE CORPORATION, et al.

No. CIV.A. WMN–02–1306.

United States District Court,
D. Maryland.

July 18, 2002.

**520**

Kieron F. Quinn, Richard S. Gordon, Quinn Gordon and Wolf LLP, Towson, MD, Denis J. Murphy, Civil Justice Inc., Baltimore, MD, for Plaintiff.

Daniel Joseph Tobian, Kirkpatrick and Lockhart LLP, Washington, DC, for Defendants.

## MEMORANDUM

NICKERSON, District Judge.

Plaintiff originally brought this putative class action in the Circuit Court for Baltimore City, alleging (1) violation of and conspiracy to violate Maryland's Consumer Protection Act; (2) aiding and abetting, as well as conspiracy to violate Maryland's Finder's Fee Acts; and (3) "deceit," more commonly plead as fraud. Defendants removed to this Court, pursuant to 28 U.S.C. § 1441(a), asserting that federal subject matter jurisdiction exists under 28 U.S.C. § 1331. Plaintiff filed a Motion to Remand, Paper No. 7. The motion has been fully briefed and is ripe for the Court's consideration. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary, and that Plaintiff's motion will be granted.

## I. FACTUAL BACKGROUND

Plaintiff alleges that he is one of many victims of a "mortgage scam" perpetrated by Defendant Crown Title and its principal, Defendant David Thurston. In particular, Plaintiff asserts that Defendants participated in a wide-spread scheme to cheat consumers by charging them unlawful fees in connection with mortgage loans. According to the complaint, Defendants rely heavily on mortgage brokers to obtain business. In order to promote their title services, Defendants assisted mortgage brokers in setting up sham entities referred to as "affiliated business arrangements." The entities appeared on settlement documents as the business that had performed substantial title or closing services, and the consumer was charged for the purported services. According to Plaintiff, however, the sham entities actually performed little or no work in connection with the mortgage transactions. Instead, the fee to the sham affiliated business arrangement, which was charged in addition to the customary fee that Defendants charged for title and closing work, was channeled back to the mortgage broker as an illegal referral fee. *See* Complaint at ¶¶ 1–4.

In 2000, Plaintiff Greer sought to acquire a home equity loan. He contacted a mortgage broker, Cannon Mortgage, L.L.C., to assist him in obtaining a loan for $22,000. After the loan closed, Plaintiff received a Settlement Statement noting that Greer paid $300 to "Diamond Settlement Group" for "Settlement or closing fee." Complaint at ¶ 32. This fee was charged in addition to the fee charged by Defendants for title and closing work, and was allegedly channeled back to Cannon Mortgage. Plaintiff alleges that Diamond Settlement Group performed no substantive work on the closing, and that the entity is a sham, established by Cannon Mortgage at the direction of Defendants, with the sole purpose of collecting prohibited fees from consumers. *Id.* at ¶¶ 34—36.

According to the Complaint, Plaintiff is but one of a class of possibly thousands of consumers, including anyone who "entered into a mortgage loan transaction using the services of Crown Title where the HUD–1 Settlement Statement includes an affiliated business arrangement receiving monies in connection with the transaction." *Id.* at ¶ 4.

## II. LEGAL STANDARD FOR REMAND

A civil action may be removed to a federal district court with original jurisdiction over that action. 28 U.S.C. § 1441. Original jurisdiction exists where the matter in controversy "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court has federal question jurisdiction under § 1331 "where the vindication of a right necessarily turn[s] on some construction of federal law." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808–09, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). While federal law creates the cause of action in the majority of federal—question cases, federal question jurisdic-

tion may also exist "where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir.1996) (*citing Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). In determining whether a case arises under federal law, courts are instructed to examine the plaintiff's "well-pleaded complaint." *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229.

It is well-settled that the removing party bears the burden of proving proper removal. *See, e.g., Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). "The removal statutes are to be strictly construed, and all doubts are to be resolved against removal." *Green v. H & R Block*, 981 F.Supp. 951, 953 (D.Md.1997). As to the burden faced by a removing party, Judge Young of this Court has explained:

> The removal jurisdiction of the federal courts is to be "scrupulously confined," and "[i]f federal [removal] jurisdiction is doubtful, a remand is necessary." This strict policy against removal and for remand protects the sovereignty of state governments and state judicial power. The party seeking removal bears the burden of stating facts in its notice of removal demonstrating an entitlement to removal.

*Egle Nursing Home v. Erie Insurance Group*, 981 F.Supp. 932, 933 (D.Md.1997) (internal citations omitted).

## III. DISCUSSION

Defendants argue that this case "arises under" federal law because Plaintiff's consumer protection claims turn on a substantial question of federal law.

Throughout the complaint, Plaintiff repeatedly refers to the alleged sham entities as "affiliated business arrangements," as that term is defined in the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607.[1] Indeed, Plaintiff mentions RESPA explicitly in two paragraphs of the complaint. Complaint at ¶¶ 19, 50. Furthermore, Plaintiff alleges that Defendants violated the Maryland Consumer Protection Act by, *inter alia*, conspiring to violate RESPA's prohibitions against charging unearned fees in connection with mortgage closings. *Id.* at ¶ 50. Therefore, Defendants argue, the Court cannot determine an essential element of Plaintiff's consumer protection claims without interpreting and applying RESPA's definition of affiliated business arrangements, as well as the statute's prohibitions against certain activities of such arrangements.

In support of their argument for removal, Defendants cite a number of cases in which federal subject matter jurisdiction was upheld because the resolution of the merits of the plaintiff's state law claim *necessarily* turned on a federal question. *See, e.g., Ormet,* 98 F.3d 799; *Garvin v. Alumax of South Carolina, Inc.,* 787 F.2d 910, 914 (4th Cir.1986); *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383 (3d Cir.2002). What Defendants do not mention is a United States Supreme Court decision holding that, if a state law claim is supported by alternative theories of recovery, only one of which sustains federal jurisdiction, then federal jurisdiction does not exist. *Christianson v. Colt Indus., Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Although Christianson was decided in the context of 28 U.S.C. § 1338, which provides federal jurisdiction over matters that "arise under" the patent laws of the United States, the Supreme Court found that § 1338 should be interpreted in the same manner as § 1331. *Id.* at 807, 108 S.Ct. 2166.

The Fourth Circuit has interpreted *Christianson* as standing for the proposition that, "where a complaint alleges multiple state law-based theories of relief for the same essential claim, each of the theories supporting the claim must independently present a sufficiently substantial federal question to support the jurisdiction under § 1331 needed for removal under § 1441(a)." *Danfelt v. Bd. of Cty. Comm'rs,* 998 F.Supp. 606, 609–10 (D.Md. 1998) (*citing Mulcahey,* 29 F.3d at 153). For example, the plaintiffs in *Mulcahey* brought a claim for negligence against the defendant chemical plant. One of the plaintiffs' theories of recovery was negligence *per se,* in that the defendant had violated federal environmental statutes. *Mulcahey,* 29 F.3d at 153. The complaint also alleged, however, negligence based on alleged violation of state and local environmental laws, as well as common law negligence. *Id.* Accordingly, the Fourth Circuit held that, under the principles enunciated in *Christianson,* "because the Plaintiffs' alternative theory of negligence *per se* is not 'essential' to their negligence theory, no federal subject matter jurisdiction exists." *Id.* at 154.

Upon examination of Plaintiff's complaint, this Court finds that, as in *Mulcahey,* Plaintiff states several possible, non-federal bases for Defendants' alleged violation of the Maryland Consumer Protection Act, which prohibits "unfair or deceptive trade practices" in the sale of any consumer realty or the extension of consumer

---

1. Congress enacted RESPA to "regulate the underlying business relationships and procedures" of which real estate settlement costs are a function, in part by prohibiting the payment of kickbacks and unearned fees. *See,* H. Rep. No. 93–866, 93rd Cong., 2nd Sess., p. 1 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6546, 6548.

credit. Md.Code Ann., Comm. Law Art. § 13–303, *et seq.* In support of Count I, Plaintiff alleges that Defendants violated the Consumer Protection Act by "concealing the arrangement between them and extracting additional and illegal fees for the mortgage brokers, at the expense of the consumer ...". Complaint at ¶ 49. Plaintiff then alleges that "[f]urther, Defendants either directly or indirectly conspired to violate [RESPA]." *Id.* at ¶ 50. Next, Plaintiff states that "[t]he failure to comply with the provisions of the *various acts* governing plaintiff, and the members of the class he represents, were deceptive and unfair acts within the meaning of the Maryland Consumer Protection Act ...". *Id.* at ¶ 51 (emphasis added). In other words, Count I of the Complaint, which is the only count that incorporates a violation of RESPA, leaves room to find Defendants liable under other, non-federal theories.

In so finding, this Court acknowledges that the way in which Plaintiff's complaint is drafted presents a somewhat unusual context for deciding the issue at hand. Plaintiff uses the term "affiliated business arrangement" over a dozen times throughout the complaint, and he explicitly defines the term by reference to RESPA in the predicate facts of the complaint. Despite these repeated references, however, Plaintiff's recovery does not turn on whether the alleged entities meet RESPA's defini-

tion of affiliated business arrangements, or even whether Defendants violated provisions of RESPA. As discussed above, the Complaint alleges that Defendants may be liable under Maryland's Consumer Protection Act for "unfair or deceptive" practices independent of any RESPA violations. Indeed, the Consumer Protection Act defines "unfair or deceptive trade practices" as encompassing 14 categories of conduct, *see* Md.Code Ann., Comm. Law Art. § 13–301, many of which are reiterated in Plaintiff's complaint. The fact that the complaint references, or is in some part based upon, federal law does not mean that this case "arises under" federal law as contemplated by § 1331. *See, Danfelt,* 998 F.Supp. 606; *Christianson,* 486 U.S. at 810, 108 S.Ct. 2166.[2]

■ As a final matter, the Court will deny Plaintiff's request for attorneys' fees and sanctions. Plaintiff argues that Defendants' removal was highly improper and baseless, and implies that it may have been done in bad faith. *See,* Pl.'s Mot. at 10. Although remand is appropriate in this case, the Court recognizes that Plaintiff's complaint contained multiple references to a federal statute that provides a cause of action, and repeatedly used a term of art defined in that statute, in order to state Plaintiff's claims. Accordingly, it was neither unreasonable nor improper for Defen-

---

2. The Court notes that, although remand is proper under *Christianson,* as it is interpreted and applied by the Fourth Circuit, Plaintiff's alternative argument for remand is without merit. In that argument, Plaintiff addresses the *Merrell Dow* decision, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650, which held that a federal statute's failure to provide a private cause of action in favor of the plaintiff precluded federal question jurisdiction, because the absence of such a remedy rendered the federal law at issue an insubstantial element of the plaintiff's claim. Here, Plaintiff concedes, as he must, that RESPA does provide a private right of action to those in his position.

Plaintiff argues, however, that this remedy is unavailable to him due to an expired statute of limitations, and accordingly, federal jurisdiction should be precluded. In support, Plaintiff cites *Mulcahey,* 29 F.3d 148, and *Danfelt,* 998 F.Supp. 606, which held, in part, that where plaintiffs were procedurally barred from pursuing a federal cause of action, no federal jurisdiction existed. As Defendants point out, however, Plaintiff's vulnerability to an affirmative defense is not equivalent to the procedural bars found in *Mulcahey* and *Danfelt,* and the Court may not anticipate or consider a possible affirmative defense in its jurisdictional inquiry.

dants to attempt to secure federal jurisdiction over this action. The Court will not punish them for their effort.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand to State Court will be granted. A separate order consistent with this memorandum will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this ___ day of July, 2002, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion to Remand to State Court (Paper No. 7), is hereby GRANTED;

2. That Defendants' Motion for Entry of Scheduling Order (Paper No. 18) is hereby DENIED as moot;

3. That Plaintiff's Motion for Rule 16 Conference, and/or for Hearing on Pending Motion to Remand (Paper No. 19) is hereby DENIED;

4. That the above-captioned action is hereby REMANDED to the Circuit Court of Baltimore City;

5. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.