## RIVERDALE BAPTIST CHURCH, et al.

v.

## CERTAINTEED CORPORATION, et al.

No. CIV.A. DKC 2004-2057.

United States District Court, D. Maryland.

Dec. 23, 2004.

B. Darren Burns, Reese and Carney, Annapolis, MD, for Plaintiffs.

Jody Maier, Towson, MD, Edward C. Bacon, Bacon Thornton and Palmer LLP, Greenbelt, MD, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution is the motion of Plaintiffs to remand this case to state court. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants Plaintiffs' motion.

## I. Background

In September of 2003, Plaintiffs Riverdale Baptist Church, Inc. and Riverdale Baptist School, Inc. (collectively "River-

dale") filed a complaint in the Circuit Court for Prince George's County against Defendant CertainTeed Corp. ("Certain-Teed") and Academy Roof Maintenance, Inc. ("Academy"), alleging breach of express and implied warranty, breach of contract, negligent construction, negligent inspection, detrimental reliance, and negligent and intentional misrepresentation regarding its roof, installed by Academy and later repaired by Defendant. *See* paper no. 2. On or about March 5, 2004, Academy moved for summary judgment, arguing that Plaintiffs' complaint against it was barred by the applicable three year statute of limitations because Plaintiffs were aware of the problem as early as 1994 but did not file suit until 2003. Paper no. 13, at 4. The state court initially denied Academy's motion. Paper no. 16. In a deposition on March 17, 2004, however, Riverdale's Director of Operations admitted that Plaintiffs were aware that the problem was attributable to defective installation by Academy no later than early 1998. *See* paper no. 18 and accompanying deposition excerpts.

On April 2, Academy filed a motion for reconsideration, citing the new evidence from that deposition. Paper no. 17. On June 4, Defendant filed its own motion for summary judgment, also asserting the statute of limitations defense. Paper no. 21. On June 11, the state court granted Academy's motion for summary judgment. Paper no. 23. On June 25, Plaintiffs filed their own motion for reconsideration and to alter or amend the state court's June 11 judgment in favor of Academy. Paper no. 25. Both Plaintiffs' motion for reconsideration and Defendant's motion for summary judgment remain pending.

On July 2, Defendant removed the action to this court, asserting diversity jurisdiction. Paper no. 1. 28 U.S.C. § 1332(a) reads, in pertinent part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States ...." It is not disputed that the amount in controversy exceeds $75,000 in this case, but until June 11, the matter was not "between citizens of different States," because both Plaintiffs and Academy are citizens of Maryland. On that date, however, Academy was awarded summary judgment as to all claims, leaving only Plaintiffs and Defendant, a citizen of Pennsylvania and Delaware. Noting that diversity was no longer blocked by the presence of Academy in the case, Defendant removed, pursuant to 28 U.S.C. § 1446(b), which states, in pertinent part:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable ....

Because diversity existed between the remaining parties, and because the amount in controversy exceeded $75,000, it would seem that Defendant timely and properly filed notice of removal. When, however, the dismissal of all non-diverse defendants results from something other than the voluntary action of the plaintiff, a federal court cannot exercise diversity jurisdiction under the so-called "voluntary-involuntary rule," and removal is not proper. *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 60 (4th Cir.1991); *see Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1988) (same); *Skevofilax ex rel. Skevofilax v. Aventis Pasteur, Inc.*, 304 F.Supp.2d 691, 693 (D.Md.2003) (case not removable "when complete diversity exists ... as a result of an interlocutory order by

a state trial judge [dismissing] the non-diverse defendant"); *Cox–Stewart v. Best Buy Stores, L.P.,* 295 F.Supp.2d 566, 568 (D.Md.2003) ("an action may not be removable despite apparently complete diversity of the parties where, as here, 'the non-diverse party has been involuntarily dismissed by order of the state judge.'") (quoting *Higgins,* 863 F.2d at 1166, and citing *Grubb* ).

After Defendant removed, this court ordered Defendant to show cause why, in light of the voluntary-involuntary rule, this case should not be remanded. Paper no. 32. In its response, Defendant argued that, in the original complaint, Plaintiffs fraudulently joined Academy for the sole and improper purpose of defeating diversity jurisdiction, and that fraudulent joinder constituted an exception to the voluntary-involuntary rule, rendering removal proper here. *See* paper no. 33. Fraudulent joinder is, in fact, a well established exception to the voluntary/involuntary rule. *Mayes v. Rapoport,* 198 F.3d 457, 461 n. 9 (4th Cir.1999) (quoting *Insinga v. LaBella,* 845 F.2d 249, 254 (11th Cir.1988)).

In a second order to show cause, this court stated:

> CertainTeed's notice of removal does not refer to the fraudulent joinder doctrine. Instead, it asserts that the case became removable when the claims against [Academy] were dismissed. If [Academy] was "fraudulently joined" in the original complaint, the complaint would have been removable when initially filed in the Circuit Court on September 16, 2003. CertainTeed was served October 22, 2003, but did not remove the case within thirty days asserting diversity jurisdiction with a motion to dismiss the claim against [Academy] in this court. Instead, CertainTeed waited until the state court granted summary judgment in favor of [Academy] and

then removed the case asserting that it had become removable within the prior 30 days.

> Accordingly, if Plaintiff seeks to challenge removal either based on timeliness or whether [Academy] was fraudulently joined, it should file a motion to remand promptly.

Paper no. 35, at 1–2. Plaintiffs, on that cue, now move to remand, arguing that because their motion to reconsider is still pending in state court, and because the result of that motion could be to rejoin Academy as a party to the case, Defendant's removal was premature. *See* paper no. 37, at 1–2. Plaintiffs further argue that Defendant lacks evidence to support its invocation of the fraudulent joinder exception. *Id.* at 2–3.

Defendant, in its response to Plaintiffs' motion for remand and to the second order to show cause, reasserts that Plaintiffs engaged in fraudulent joinder by naming Academy as a defendant. *See* paper no. 39. Defendant also contends that removal was, in fact, timely, because Defendant could not have asserted fraudulent joinder before it knew "as a matter of fact and law[ ] that Academy was fraudulently joined." *Id.* at 4. Defendant complains it was thus forced to straddle "a very murky 'bright line'" when considering the timing of its removal. *Id.*

## II. Standard of Review

■ It is well-settled that the removing party bears the burden of proving proper removal. *Greer v. Crown Title Corp.,* 216 F.Supp.2d 519 (D.Md.2002) (citing *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994)). On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," indicative of the reluctance of federal courts "to interfere with matters

properly before a state court." *Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 701–2 (D.Md.1997) (internal quotation omitted); *see also Mulcahey*, 29 F.3d at 151.

## III. Analysis

For the reasons that follow, the court concludes that (1) Plaintiffs' joinder of Academy was not fraudulent, and that therefore the voluntary-involuntary rule clearly applies and the court must remand, *Skevofilax*, 304 F.Supp.2d at 693; and (2) even if that joinder were fraudulent, Defendant did not timely remove.

### A. Joinder of Academy Was Not Fraudulent

 The Fourth Circuit has held that to establish that a non-diverse defendant has been fraudulently joined, the removing party must establish that either (1) there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; ·or (2) there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Mayes*, 198 F.3d at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993)). The burden on the defendant claiming fraudulent joinder is heavy: The defendant must show that the plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor. *Marshall*, 6 F.3d at 232–33 (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992)). In determining whether joinder is fraudulent, the court is "not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *Mayes*, 198 F.3d at 464 (quoting *AIDS Counseling and Testing Ctrs. v. Group W. Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir.1990)).

Defendant does not allege outright fraud in Plaintiffs' pleadings. Paper no. 33, at 1. The court therefore considers only Defendant's argument that, because Plaintiffs' claim against Academy has been found by the state court to be barred by the applicable statute of limitations, there is "no possibility" that Plaintiffs will establish a cause of action against Academy, so Academy was fraudulently joined, diversity exists between the remaining parties, and the case should not be remanded.

In *AIDS Counseling*, the Fourth Circuit explained that "fraudulent joinder" is a term of art, and that

> it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if "there [is] no real intention to get a joint judgment, and ... there [is] no colorable ground for so claiming." .

903 F.2d 1000, 1003–04 (quoting *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D.Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir.1983)). *AIDS Counseling's* description of fraudulent joinder appears to contradict itself: The "real intention" formulation—which *Lewis* in turn quoted from *Parks v. New York Times Company*, 308 F.2d 474, 478 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964)—is significantly at odds with the less subjective "no cause of action" language of the previous sentence, which itself mirrors the first prong of the two-prong test for fraudulent joinder claims adopted for this circuit in *Marshall* and perpetuated by *Mayes*, *supra*. The "no possibility of success" prong of that test is often applied as a condition sufficient to establish fraudulent joinder. *See, e.g., Newman v. Motorola, Inc.*, 125 F.Supp.2d 717 (D.Md.2000); *Rus-*

*sell Petroleum Corp. v. Environ Prods.,* 333 F.Supp.2d 1228 (M.D.Ala.2004). In this court's view, however, it is more properly applied not rigidly, but—as it was intended—as a proxy for the detection of fraud in joinder.

A review of the lineage of the Fourth Circuit's test reveals that it has grown beyond what it was meant to be. The test was adopted wholesale by the *Marshall* court, which quoted without comment from the Fifth Circuit case *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981). That case, in turn, cited as the basis for its dual formulation a line of cases originating with *Parks.* The *Parks* opinion, however, does not seem so amenable to *Miller Brewing's* interpretation. The *Parks* analysis of fraudulent joinder is better understood in its original context:

> In *Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart,* 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473 (1913), Mr. Justice Holmes speaking for the court in an unanimous opinion laid down the following applicable rule:
>
> > 'On the question of removal we have not to consider more than whether there was a real intention to get a joint judgment and whether there was a colorable ground for it shown as the record stood when the removal was denied.'
>
> *Morris v. E.I. Du Pont De Nemours & Company,* 68 F.2d 788 (8th Cir.1934) teaches that *the determination of fraudulent joinder is to be based on whether there was a real intention on colorable grounds to procure a joint judgment.* Doubt as to whether under the state law a case of joint liability is stated, or doubt with respect to the allegations concerning the resident defendants being false as when the question depends upon the credibility of witnesses or the weight of evidence will not render the joinder

fraudulent. On the other hand, there must be some reasonable basis for believing that there is joint liability. The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant *could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous.* And a joinder is fraudulent if the facts asserted with respect to the resident defendant are shown to be *so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of plaintiff* that there was joint liability.

*Parks,* 308 F.2d at 477 (italics added). It seems clear that the *Parks* court did not intend to deem fraudulent *per se* all cases of joinder in which, at any time and for any reason, the cause of action against a non-diverse defendant was determined to be impossible to sustain. Rather, the courts in *Parks, Morris,* and *Schwyhart* viewed the "no possibility of success" test as a means for ascertaining whether joinder was grounded in a "real intention on colorable grounds," or merely "a sham and frivolous." *Id.* To adopt the alternative— that if "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," *Mayes,* 198 F.3d at 464, then the joinder is *per se* fraudulent—seems, especially on the facts in this case, an unnecessary and unwarranted expansion of the fraudulent joinder doctrine that renders meaningless the voluntary-involuntary rule.

Here, the argument for fraudulent joinder rests on the contention that Plaintiffs did not file within the applicable statute of limitations. Defendant contends that because the state court found that the stat-

ute of limitations bars Plaintiffs' suit against Academy, this court must, *ex post*, find Academy's joinder to have been fraudulent, despite the fact that the statute of limitations argument did not result in the dismissal of Academy (insofar as there is yet a "result," *see infra* at 14–15) until after substantial discovery, initial denial of Academy's summary judgment, and a successful motion to reconsider.

While the Fourth Circuit has not ruled squarely on the question, courts in several other circuits have held, with varying requirements of certainty, that if the statute of limitations has run on a cause of action against a non-diverse defendant, the court may—and in some jurisdictions, must—find joinder of that defendant to be fraudulent. *See, e.g., Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1320 (9th Cir.1998) (plaintiff's failure to state cause of action against non-diverse defendants "demonstrates beyond peradventure that they were sham defendants for purposes of removal"); *LeBlang Motors, Ltd. v. Subaru of Am., Inc.,* 148 F.3d 680, 690 (7th Cir. 1998) (because "the time to bring the cause of action had expired, ... the district court was correct in dismissing [non-diverse defendant] as fraudulently joined."); *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 852 (3rd Cir.1992) (no fraudulent joinder where the complaint was not "wholly insubstantial and frivolous"); *Russell Petroleum,* 333 F.Supp.2d at 1233 (because "plaintiff's claims against a resident defendant are barred by the statute of limitations, there is no possibility the plaintiff can establish a cause of action against the resident defendant, and thus the non-resident was fraudulently joined.") (citation omitted); *Ross v. Wyeth (In re Diet Drugs Prods. Liab. Litig.),* 2004 WL 220861, at *15–16, 2004 U.S. Dist. LEXIS 1170 (E.D.Pa. Jan. 12, 2004) (statute of limitations defense supports fraudulent joinder claim where "the statute of limitations 'un-

questionably' precludes the possibility of relief"); *Steele v. Anderson,* 2004 WL 45527, at *1–4, 2004 U.S. Dist. LEXIS 136 (N.D.N.Y. Jan. 8, 2004) (evaluating evidence to disprove statute of limitations and thereby rejecting diverse defendant's allegation of fraudulent joinder); *Moseley v. Wyeth,* 2002 U.S. Dist. LEXIS 26759, at *5 (W.D.Okla. Sept. 13, 2002) (non-diverse defendant fraudulently joined because claim against him was "clearly barred by the statute of limitations").

For the most part, however, successful fraudulent joinder/statute of limitations arguments occur in cases where the issue is fairly easy to determine, either from the face of the complaint or with resort to limited additional evidence, while courts facing more ambiguous factual situations reject such arguments. In *Ritchey,* for instance, the court stated that "[i]t is pellucid that by the time the complaint in question was filed ... the statute of limitations had long since run ...." 139 F.3d at 1320. In *LeBlang,* the court, finding that the statute of limitations had run, noted that "[w]here it is apparent from the undisputed facts ... that only one conclusion can be drawn, the question becomes one for the court," and concluded that, with respect to the statute of limitations question, "[i]n the present case the facts and necessary conclusions are sufficiently clear to meet [that] standard." 148 F.3d at 690 n. 6. In *Ross,* the court found that plaintiff "unquestionably fail[ed] to plead all the elements required" to establish a tolling defense against a statute of limitations bar that was otherwise plainly applicable. 2004 WL 220861, at *5, 2004 U.S. Dist. LEXIS 1170, at *16. In *Moseley,* the court found that widespread media coverage of the issues in the case were "more than sufficient to impute knowledge to plaintiff about her claims," thus establishing a statute of limitations bar, while plain-

tiff, in attempting to establish equitable tolling, "simply set [ ] forth conclusory allegations" and "and fail[ed] to provide any factual basis to support these conclusory allegations." 2002 U.S. Dist. LEXIS 26759, at *9–10. In *Steele*, on the other hand, the court found that "[a]t the very least, there are factual issues concerning when the fiduciary relationship was openly repudiated. Accordingly, based on the facts as alleged in the Complaint, the instant claims are timely and the statute of limitations does not provide a basis for disregarding any of the non-diverse Defendants . . . ." 2004 U.S. Dist. LEXIS 136, at *4.

This pattern is sensible. Allowing a factually complicated statute of limitations issue that has taken months to develop in state court to support a fraudulent joinder claim runs afoul of both the fraudulent joinder doctrine as properly understood, *see supra* at 947–48 and the principles underlying the removal provisions generally. As noted in *Zumas v. Owens–Corning Fiberglas Corp.,* 907 F.Supp. 131, 132 (D.Md.1995), Congress voiced concerns about late removal when it amended the statutory language governing timing of removal, 28 U.S.C. § 1446(b), in 1988, stating: "The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. . . . Removal late in the proceedings may result in substantial delay and disruption." H.R.Rep. No. 889, 100th Cong., 2d Sess. 72, reprinted in U.S.Code Cong. & Admin. News 1988, pp. 5982, 6032–33. Here, removal at this late date is certain to result in such delay.

This view is supported by Schwarzer, Tashima and Wagstaffe, who write that "[o]rdinarily, courts do not consider a nondiverse defendant's defenses on the merits in determining whether that defendant's joinder was 'fraudulent,'" and although "[t]he result is different where, under state law, the defense is a procedural bar to the action regardless of its merits (e.g., the statute of limitations under California law)," even in those circumstances, "[s]uch a defense may be considered for 'fraudulent joinder' purposes whether it appears *on the face of the pleadings or from matters subject to judicial notice* (e.g., the date a lawsuit was filed may be judicially noted for statute of limitations purposes)." Judge William W. Schwarzer, Judge A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial §§ 2:672.2–3 (2004) (italics added) (citations omitted). That limitation, condoning only a limited "piercing of the pleadings" for fraudulent joinder in statute of limitations cases, certainly does not allow for the wider lens that would be required to find fraudulent joinder here.

Furthermore, one of the reasons underlying the voluntary/involuntary distinction is the practical one of allowing the state court to resolve finally the status of the non-diverse defendant: "In most of the instances in which the Supreme Court has employed the voluntary-involuntary rule [to compel remand], it appears that the elimination of the resident defendants was not final at the time the issue of the propriety of removal was considered because the state appellate process as to those defendants was not complete. *E.g., [American Car & Foundry v. Kettelhake,* 236 U.S. 311, 35 S.Ct. 355, 59 L.Ed. 594 (1915) ], [Whitcomb v. Smithson,* 175 U.S. 635, 20 S.Ct. 248, 44 L.Ed. 303 (1900) ], [Kansas City Suburban Belt Ry. v. Herman,* 187 U.S. 63, 23 S.Ct. 24, 47 L.Ed. 76 (1902) ]." Insinga,* 845 F.2d at 252–53. In all those cases, remand was upheld. As another court explained:

The expedient of removal to a federal court cannot be allowed to cut off such a fundamental right of judicial review. It

goes without saying that if the Supreme Court of Alabama should ultimately enter an order setting aside [the lower court ruling] ... there would be no complete diversity in this case. The compelling concepts behind *Kettelhake* are (1) that the diversity must either exist when the suit is filed or thereafter be created by the voluntary act of the plaintiff and not by plaintiff's involuntary act or by the act of the state court; and (2) that federal courts cannot trespass upon the orderly appellate processes of the state courts.

*Harrell v. Reynolds Metals Co.,* 599 F.Supp. 966, 969–70 (N.D.Ala.1985). As in *Harrell* and *Kettelhake,* the fact that the appellate process has not been exhausted—and, indeed, that a motion for reconsideration is still pending—precludes removal at this time.

Here the claim against Academy is not "clearly barred by the statute of limitations," and there may yet be a "colorable ground" for the claim, because Plaintiffs' motion to reconsider the judgment is still pending.

Finally, another circuit has recently articulated a "common defenses" rule, holding in a closely divided decision that "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant. In such a situation, the entire suit must be remanded to state court." *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 571 (5th Cir.2004) (en banc).[1] That court's majority opinion explained that

> when, on a motion to remand, a showing that compels a holding that there is no

reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such—an allegation that, as phrased by the Supreme Court in *Chesapeake & O.R. Co. v. Cockrell,* "the plaintiff's case [is] ill founded as to all the defendants."

*Id.* at 574. Courts in at least two other circuits are in agreement. *See Boyer v. Snap–On Tools Corp.,* 913 F.2d 108 (3rd Cir.1990) ("Informed by *Cockrell,* we hold that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses."); *In re New Eng. Mut. Life Ins. Co. Sales Practices Litig.,* 324 F.Supp.2d 288, 298–304 (D.Mass.2004). *But see Ritchey,* 139 F.3d at 1320 (9th Cir.1998) (recognizing that "it is, perhaps, slightly peculiar to speak of [non-diverse defendants] as sham defendants because the statute of limitations bars a claim against them, when that would seem to lead to an argument that [the diverse defendant] itself is a sham defendant because the statute of limitations has also run against it," but nevertheless finding fraudulent joinder).

Here, Defendant's own motion for summary judgment argues that "Riverdale's

---

**1.** The *Smallwood* court preferred the term "improper joinder" to "fraudulent joinder," finding the former more consistent with the applicable statutory language than the latter. *See* 385 F.3d at 571 n. 1.

complaint fails in its entirety as a matter of law under the applicable statutes of limitation." Paper no. 21, at 7. In that motion, Defendant argues that "the claims are time-barred ... because Riverdale knew of the roof's alleged non-adhesion in March of 1999, at the latest, yet it waited until September of 2003 to file suit." *Id.* This argument applies equally to both Defendant and Academy, and in fact, Academy won summary judgment on this issue (though, as discussed *supra* at 14–15, that judgment is not final). Under the common defenses rule, then, the case would plainly be subject to remand.

Because there are other grounds for remand, this court need not here adopt the holding of *Smallwood* that the presence of a "common defense" constitutes a *per se* bar on the fraudulent joinder exception to the voluntary-involuntary rule. It seems to the court, however, that not to adopt that holding is to eviscerate what little remains of the voluntary-involuntary rule in light of the Fourth Circuit rule articulated in *Mayes* and other cases that courts may "consider the entire record," *see supra* at 947, when evaluating fraudulent joinder claims. As another court explained, when the court, in evaluating fraudulent joinder claims, may consider not only the initial complaint but the entire record at the time of removal, post-complaint dismissals unavoidably become fair game:

> Every time a state court issues summary judgment in favor of a nondiverse defendant, the plaintiff in fact can never prove the cause of action against that defendant. Accordingly, in an action with only one remaining diverse defendant, that defendant could automatically remove the action. This conclusion necessarily renders the voluntary/involuntary distinction meaningless, for an involuntary dismissal via a state court summary judgment makes the case as

removable as when the plaintiff voluntarily dismisses the nondiverse defendant.

*Katz v. Armatori,* 718 F.Supp. 1508, 1513–14 (S.D.Fla.1989). In other words, under the expansive fraudulent joinder review adopted by the Fourth Circuit and others, *any* defense upon which dismissal of the non-diverse party could be predicated *ex post* would provide a basis not only for dismissal of that party, but, if no other diverse parties remain, for removal as well. *See also supra* at 947–48 (discussing expansion of the *Mayes* test beyond the proper meaning of fraudulent joinder). The *common defense rule* provides at least some relief from that seemingly undesirable result, by ensuring that the grounds for dismissal are not absurdly at odds with the spirit of the fraudulent joinder doctrine. The court hopes that the absence (as yet) of a common defenses rule in the Fourth Circuit will not be construed as an open invitation to defendants to abuse the removal process in such situations. Comity and federalism are the interests more properly served. *See Smallwood,* 385 F.3d at 576.

For the reasons stated above, the court finds that joinder was not fraudulent. The voluntary-involuntary rule therefore applies, and the case must be remanded.

### B. Removal Was Not Timely

■ Even if the joinder of Academy were fraudulent, Defendant did not timely remove. The thirty day period during which removal is permitted by § 1446(b) begins "after receipt by the defendant ... of a copy of an amended pleading, motion, order *or other paper from which it may first be ascertained* that the case is one which is or has become removable." (italics added). In its opposition to remand, Defendant asserts that it could not "ascer-

tain[ ] that the case is one which is or has become removable," *Id.*, "until, at the earliest, Gregory Hurley testified on behalf of Academy that Academy's last involvement with the roof was in September of 1998. That testimony occurred on June 2, 2004 and was reduced to paper on June 7, 2004." Paper no. 39, at 4. Defendant contends that it required Mr. Hurley's deposition to determine that the statute of limitations had so certainly run that Plaintiffs had "no possibility" of success against Academy, and that therefore Academy had been fraudulently joined, rendering the case removable. Were Mr. Hurley's deposition, in fact, necessary to make such a determination, Defendant's July 2 removal would indeed fall within the thirty day period, and therefore be timely.

Defendant's newfound reliance on the Hurley deposition, however, is somewhat disingenuous. On June 4, Defendant moved for summary judgment on the ground that "Plaintiffs' entire Complaint is barred by the statute of limitations." Paper no. 21, at 1. That motion relies upon neither Mr. Hurley's testimony of June 2 nor any other evidence unknown to Defendant on or before May 19.[2] Defendant was clearly persuaded that, as of May 19, there was sufficient evidence in the record to warrant summary judgment on the issue of the statute of limitations. It follows that Defendant was able to "ascertain[ ] that the case is one which is or has become removable" on that date. § 1446(b). Accordingly, Defendant had thirty days, or until June 18, to remove. *See Id.* Defendant did not remove until July 2, so removal was untimely.

Defendant laments that its ability to know with certainty whether the case was removable was buffeted about in the prec-

edent months by both the continuing influx of newly available evidence and the state court's reversal on the question of summary judgment for Academy. Another court in this district once echoed a warning against putting defendants "between *Scylla* and *Charybdis* (or on the horns of a Fed.R.Civ.P. 11 dilemma) in undertaking to determine in good faith whether an ambiguous complaint does or does not permit removal." *Gray v. Rite Aid Corp.*, 189 F.Supp.2d 347, 349 (D.Md.2002) (citing *Lovern v. General Motors Corp.*, 121 F.3d 160 (4th Cir.1997)). That court also cautioned, however, that

> *Lovern* is not to be read as granting a wholly risk-free choice to a defendant in its determination of whether to remove a case to federal court; the ground for removal need not appear beyond a reasonable doubt in a court order before the right to effect a removal may be unmistakably apparent. To the contrary, as *Lovern* noted, and as the many cases cited in [*Link Telecomms., Inc. v. Sapperstein*, 119 F.Supp.2d 536, 542 (D.Md.2000) ], have found, the Fourth Circuit "will allow the [district] court to rely on the face of the initial pleading *and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper.*" *Lovern*, 121 F.3d at 162 (emphasis added).

*Id.* That the state court judge granted summary judgment on June 11 is of no consequence on this question. The dispositive issue is when Defendant was first able to ascertain that the case was removable, not when the state court first put its

**2.** Of the evidence cited in Defendant's motion for summary judgment, the most recently received are Exhibits 21 and 22, labeled as exhibits at deposition on May 19, 2004. *See* paper no. 21, Exhibits 21, 22.

stamp on the matter. In this, Defendant's situation is similar to that of the diverse defendant in *Deming v. Nationwide Mut. Ins. Co.*, No. 3:03cv1225 (CFD), 2004 WL 332741, 2004 U.S. Dist. LEXIS 2396 (D.Conn. Feb. 14, 2004). Nationwide, the diverse defendant, argued that its non-diverse co-defendants were fraudulently joined. That court, too, concluded that Nationwide did not timely remove:

> Nationwide has not indicated that it learned any new facts from which it could ascertain that the claims against the non-diverse defendants had "no possibility" of success between the time that plaintiff filed her complaint and the time that the Superior Court ruled on the motion to strike [the non-diverse defendants from the case], other than the ruling on the motion to strike itself. However, rather than file a notice of removal within 30 days of service of the Amended Complaint, which Nationwide now claims clearly did not state even an arguable claim against the non-diverse defendants, Nationwide waited until after the state court had ruled on the merits of those claims before asserting that they amounted to fraudulent joinder. Permitting such "fraudulent joinder by hindsight" removal petitions would serve both to undermine 28 U.S.C. § 1446(b)'s thirty-day limit and, as noted above, render meaningless the long-held distinction between voluntary and involuntary dismissals of non-diverse parties in creating removability. Therefore, "the Court concludes that [Nationwide] could have intelligently ascertained within the thirty days following [its] receipt of the [Amended] Complaint [whether or not] it had valid arguments that [the claims against the non-diverse parties] should fail. With such knowledge, [Nationwide's] thirty day window of opportunity to invoke federal juris-

diction on the basis of diversity and fraudulent joinder began running" with service of the Amended Complaint. *Clingan v. Celtic Life Ins. Co.*, 244 F.Supp.2d 1298, 1308 (M.D.Ala.2003).

*Id.* at 2004 WL 332741, *5, 2004 U.S. Dist. LEXIS 2396, *17–18 (internal citation omitted). As was stated at the outset, all doubts about removal are to be resolved in favor of remand. This case, raising only state law claims, can and will be ably resolved in state court.

## IV. Conclusion

For the reasons stated above, this court finds that (1) fraudulent joinder did not occur, and the voluntary-involuntary rule applies; and (2) even if fraudulent joinder did occur, then Defendant was able to ascertain that fact no later than May 19, so removal was untimely. In either case, removal was improper. Accordingly, the court will GRANT Plaintiffs' motion to remand. A separate Order will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 23rd day of December, 2004, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion of Plaintiffs Riverdale Baptist Church, Inc. and Riverdale Baptist School, Inc., for remand (paper no. 37), BE, and the same hereby IS, GRANTED;

2. This case BE, and the same hereby IS, REMANDED to the Circuit Court for Prince George's County;

3. The clerk take all necessary steps to effectuate the remand promptly; and

4. The Clerk will transmit copies of the Memorandum Opinion and this Order to

counsel for the parties, and CLOSE this case.